**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| PLUMBERS & STEAMFITTERS LOCAL 773 PENSION FUND, BOSTON RETIREMENT SYSTEM, TEAMSTERS LOCAL 237 ADDITIONAL SECURITY BENEFIT FUND, and TEAMSTERS LOCAL 237 SUPPLEMENTAL FUND FOR HOUSING AUTHORITY EMPLOYEES, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiffs,<br><br>    v.<br><br>DANSKE BANK A/S, THOMAS F. BORGEN, HENRIK RAMLAU-HANSEN, JACOB AARUP-ANDERSEN, and OLE ANDERSEN,<br><br>     Defendants. | **No. 1:19-cv-00235 (VEC)** |

**MEMORANDUM OF LAW IN SUPPORT OF THE INDIVIDUAL DEFENDANTS'
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

```
```

## TABLE OF CONTENTS

## TABLE OF CONTENTS

## TABLE OF CONTENTS

PAGE

ALLEGATIONS OF THE SECOND AMENDED COMPLAINT ................................................. 1

ARGUMENT .................................................................................................................................. 3

    A.    Plaintiffs Have Failed to Plead Minimum Suit-Related Contacts that Create a Substantial Connection Between the Individual Defendants and the United States. ............................................................................................ 4

    B.    The Exercise of Personal Jurisdiction over the Individual Defendants Is Not Reasonable. ................................................................................................. 8

CONCLUSION ............................................................................................................................... 9

# **TABLE OF AUTHORITIES**

P<small>AGE

*Alki Partners, L.P. v. Vatas Holding GmbH*,
 769 F. Supp. 2d 478 (S.D.N.Y. 2011) ................................................................................4

*Asahi Metal Indus. Co. v. Superior Court*,
 480 U.S. 102 (1987) .........................................................................................................4, 9

*In re AstraZeneca Sec. Litig.*,
 559 F. Supp. 2d 453 (S.D.N.Y. 2008) ..............................................................................6, 7

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*,
 902 F.2d 194 (2d Cir. 1990) ..............................................................................................3

*In re Braskem S.A. Sec. Litig.*,
 246 F. Supp. 3d 731 (S.D.N.Y. 2017) ..............................................................................3, 5

*Bristol-Myers Squibb Co. v. Superior Court*,
 137 S. Ct. 1773 (2017) .....................................................................................................3, 4

*Burger King Corp. v. Rudzewicz*,
 471 U.S. 462 (1985) ..........................................................................................................4

*Cedar Petrochems., Inc. v. Dongbu Hannong Chem. Co.*,
 2009 WL 666780 (S.D.N.Y. Mar. 6, 2009) .......................................................................6

*Daimler AG v. Bauman*,
 571 U.S. 117 (2014) ..........................................................................................................3

*In re DaimlerChrysler AG Sec. Litig.*,
 247 F. Supp. 2d 579 (D. Del. 2003) ................................................................................7, 8

*Das v. Rio Tinto PLC*,
 332 F. Supp. 3d 786 (S.D.N.Y. 2018) ...............................................................................3

*Gmurzynska v. Hutton*,
 257 F. Supp. 2d 621 (S.D.N.Y. 2003) ...............................................................................5

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
 564 U.S. 915 (2011) ..........................................................................................................3

*Jazini v. Nissan Motor Co.*,
 148 F.3d 181 (2d Cir. 1998) ..............................................................................................4

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984) ...........................................................................................................6

*In re Magnetic Audiotape Antitrust Litig.*,
    334 F.3d 204 (2d Cir. 2003) ...............................................................................................3

*In re Rhodia S.A. Sec. Litig.*,
    531 F. Supp. 2d 527 (S.D.N.Y. 2007) ................................................................................7

*SEC v. Sharef*,
    924 F. Supp. 2d 539 (S.D.N.Y. 2013) ................................................................................9

*SEC v. Straub*,
    921 F. Supp. 2d 244 (S.D.N.Y. 2013) ................................................................................3

*In re Smith Barney Transfer Agent Litig.*,
    884 F. Supp. 2d 152 (S.D.N.Y. 2012) ................................................................................5

*Tarsavage v. Citic Trust Co.*,
    3 F. Supp. 3d 137 (S.D.N.Y. 2014) ....................................................................................8

*In re Terrorist Attacks on Sept. 11, 2001*,
    714 F.3d 659 (2d Cir. 2013) ...............................................................................................3

*Tracinda Corp. v. DaimlerChrysler AG*,
    364 F. Supp. 2d 362 (D. Del. 2005) ...................................................................................7

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
    916 F.3d 143 (2d Cir. 2019) ...............................................................................................4

*Walden v. Fiore*,
    571 U.S. 277 (2014) ..................................................................................................3, 6, 7

*Wilder v. News Corp.*,
    2015 WL 5853763 (S.D.N.Y. Oct. 7, 2015) ......................................................................8

## STATUTES & RULES

17 C.F.R. § 240.12g3-2(b) ..............................................................................................................5

Fed. R. Civ. P. 12 ...........................................................................................................................1

ÓTHER ÁUTHORITIES

10C Harold Bloomenthal & Samuel Wolff, *International Capital Markets and Securities Regulation* § 49:63 (2019) ...................................................................................................5

Defendants Jacob Aarup-Andersen, Ole Andersen, and Thomas F. Borgen (collectively, "Individual Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Second Amended Complaint ("SAC") (Dkt. No. 48) pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.  The Individual Defendants join in all respects and incorporate as if set forth herein the arguments and authorities in the Memorandum in Support of Defendants' Motion to Dismiss the SAC filed on behalf of Danske Bank A/S ("DB").[1]  The SAC should be dismissed in its entirety as to all Defendants for the reasons set forth in the DB Brief.

This memorandum provides an additional, independent reason why the SAC should be dismissed with prejudice as against each of the Individual Defendants: namely, that Plaintiffs have failed to sufficiently allege personal jurisdiction over any of them.

### ALLEGATIONS OF THE SECOND AMENDED COMPLAINT

This is a securities case asserting claims against a Danish bank—whose common stock trades only in Denmark—and four of its current or former officers or directors, all of whom are European citizens that reside in Denmark.  As set forth in the DB Brief, this case has little to do with securities in any country, and nothing to do with fraud on any DB investors.  Instead, it focuses overwhelmingly on allegations concerning departures from AML best practices at DB's Estonian branch (*see, e.g.*, SAC ¶¶ 26-46), the internal and external investigations in Denmark and Estonia into those AML issues (*see, e.g.*, *id.* at ¶¶ 87-97), and the efforts that DB undertook in Denmark to address those issues and ultimately "wind down" its Estonian operations (*see, e.g.*, *id.* at ¶¶ 66-68; 80).  To the extent that Plaintiffs try to link those European AML issues to statements by any of the Individual Defendants, they do so by reference to generalized statements made in Denmark about DB's business, claiming that those statements should have

---

[1] The brief submitted on behalf of DB is referred to herein as the "DB Brief" or the "DB Br."  (Dkt. No. 61.)  Terms not otherwise defined herein have the same meaning as in the DB Brief.

affirmatively mentioned the issues in Estonia sooner.  (*See, e.g.*, *id.* at ¶¶ 200-201, 231, 234-235, 246.)  The SAC seeks to bring these claims under the U.S. securities laws on behalf of a class of U.S. investors in this U.S. Court because a small number of ADRs in respect of DB's Danish securities trade in the United States.  (*See* DB Br. at 5-7 & n.3.)

But the SAC fails to plead any specific facts that connect any of the Individual Defendants to the United States.  Nowhere in the SAC do Plaintiffs allege a single jurisdictionally relevant fact that connects Messrs. Aarup-Andersen, Andersen, or Borgen to the United States.  Plaintiffs do not allege that any of the Individual Defendants have ever resided or worked in the United States—or have ever even traveled there for any purpose that is relevant in any way to the allegations in the SAC.  Plaintiffs do not allege that the Individual Defendants had any specific contacts in the United States.  They do not allege, for example, that any of the statements they seek to attribute to the Individual Defendants were made in the United States or were purposefully directed in any way towards the United States.  They certainly do not allege that any of the alleged misstatements made by the Individual Defendants were contained in SEC or other U.S. regulatory filings by DB.

Instead, Plaintiffs offer a single conclusory and nonspecific allegation—mechanically repeated verbatim in back-to-back paragraphs—that "Defendants expressly agreed to subject themselves to this Court's jurisdiction in connection with registering the Danske Bank ADRs for sale in the United States and/or otherwise availed themselves of the American capital markets."  (SAC ¶¶ 12-13.)  But this conclusory allegation is not specific to any particular Individual Defendant.  And, more fundamentally, this allegation contains no well-pleaded facts regarding *how* any of the Individual Defendants either "agreed" to or "otherwise availed themselves" of

this Court's jurisdiction. The remaining 308 paragraphs of the SAC offer nothing further supporting the Court's personal jurisdiction over the Individual Defendants.

## ARGUMENT

On a Rule 12(b)(2) motion, "plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). To state a *prima facie* case of personal jurisdiction for the Individual Defendants, plaintiffs must "plead[] in good faith . . . legally sufficient allegations of jurisdiction" as to each. *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990). Plaintiffs "must plead *facts* which, if true, are sufficient in themselves to establish jurisdiction as to each defendant." *SEC v. Straub*, 921 F. Supp. 2d 244, 251 (S.D.N.Y. 2013) (emphasis added) (citation omitted); *Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786, 799 (S.D.N.Y. 2018). The court "will not draw argumentative inferences in the plaintiff's favor and need not accept as true a legal conclusion couched as a factual allegation." *In re Braskem S.A. Sec. Litig.*, 246 F. Supp. 3d 731, 751 (S.D.N.Y. 2017) (quoting *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (internal quotation marks omitted)).

To plead specific personal jurisdiction, a plaintiff must allege a sufficient "relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (internal citations omitted).[2] To "exercise jurisdiction consistent with due process, the defendant's *suit-related conduct* must create a *substantial connection* with the forum." *Id.* (emphasis added). Pleading this "substantial connection" between the forum and a foreign

---

[2] Plaintiffs do not (and could not) plead general jurisdiction over the Individual Defendants. None are alleged to be domiciled in the United States. *See Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017). And Plaintiffs' SAC is devoid of any allegations against the Individual Defendants suggesting "affiliations with the [United States that] are so 'continuous and systematic' as to render [any of] them essentially at home in the [United States]." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

3

defendant demands that Plaintiffs adequately allege that the defendants "purposefully availed" themselves of the forum or "purposefully directed" their actions to the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-77 (1985) (citations omitted); *see also U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019). But establishing purposeful availment or direction is insufficient for exercising personal jurisdiction if the contacts or conduct alleged are not "suit-related"—that is, plaintiffs' claims must actually "arise out of or relate to the defendant's forum conduct." *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780 (alterations incorporated) (citations omitted). In addition, the Court must determine that the exercise of jurisdiction over the nonresidents is reasonable. *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987).

### A. *Plaintiffs Have Failed to Plead Minimum Suit-Related Contacts that Create a Substantial Connection Between the Individual Defendants and the United States.*

The SAC fails to sufficiently allege specific personal jurisdiction. Plaintiffs have not alleged any plausible suit-related allegations that the Individual Defendants purposefully established minimum contacts with, or otherwise directed their activities toward, the United States. *U.S. Bank Nat'l Ass'n.*, 916 F.3d at 150.

None of the allegations against the Individual Defendants draws any link at all—let alone a link sufficient to establish personal jurisdiction—between the Individual Defendants' conduct and the United States. Instead, Plaintiffs offer a single, unsupported legal conclusion that Plaintiffs "agreed" to jurisdiction and "availed themselves of the American capital markets." (SAC ¶¶ 12-13.) But this allegation is precisely the sort of "conclusory non-fact-specific jurisdictional allegations" that cannot establish personal jurisdiction. *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998); *see also Alki Partners, L.P. v. Vatas Holding GmbH*, 769 F. Supp. 2d 478, 487 (S.D.N.Y. 2011) ("Conclusory allegations lacking factual specificity . . . do

4

not satisfy plaintiff's burden."). In analogous situations, Courts routinely dismiss cases on personal jurisdiction grounds where plaintiffs completely fail to plead sufficient, non-conclusory allegations linking a defendant to the United States. *See In re Braskem S.A. Sec. Litig.*, 246 F. Supp. 3d at 769-70 (finding "sweeping and conclusory allegations" that fail to "concretely" allege "any role" relating to "domestic purchasers of" the relevant security are insufficient). *Gmurzynska v. Hutton*, 257 F. Supp. 2d 621, 627 (S.D.N.Y. 2003) (finding that where conduct occurred abroad and involved non-U.S. individuals or entities, a "conclusory assertion" that the defendant's conduct had some "foreseeable effects within the forum is not sufficient to satisfy the minimum contacts requirement") (citation and internal quotation marks omitted); *see also In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 158 (S.D.N.Y. 2012) (finding that the court need not accept "legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statement"). The SAC fails for this reason alone.

Insofar as Plaintiffs' conclusory allegation could be read to refer to DB's Form F-6, it is even more deficient in pleading a *prima facie* case for personal jurisdiction over the Individual Defendants. As referenced in the DB Brief, DB filed a Form F-6 to establish a "sponsored" Level 1 ADR program for DB as of January 28, 2016.[3] (*See generally* DB Br. at 6-7.) Plaintiffs do not mention the Form F-6 at all in the lengthy SAC, but the document only confirms Plaintiffs' failure to sufficiently plead personal jurisdiction against the Individual Defendants for at least three reasons.

First, contrary to Plaintiffs' unsupported assertion in the SAC, the F-6 does not reflect a consent to jurisdiction by any of the Individual Defendants. Rather, as part of the Deposit

---

[3] DB's ADRs are traded only over the counter in the United States (so-called "Level 1" ADRs). Because the Copenhagen Stock Exchange remains DB's primary trading market, its Level 1 ADRs are exempt from the ordinary registration and reporting requirements of the Securities Act of 1933. *See* 17 C.F.R. § 240.12g3-2(b); 10C Harold Bloomenthal & Samuel Wolff, *International Capital Markets and Securities Regulation* § 49:63 (2019).

Agreement, which DB filed as an exhibit to the Form F-6, only **DB itself** consented to jurisdiction in the United States for claims arising out of the sponsored ADR program. (Ex. 11 (2016 F-6) at 21-22.[4]) There is no consent to jurisdiction on the part of any other individual or entity. In fact, the Individual Defendants are not even parties to the Deposit Agreement, and it does not purport to bind them. *Cedar Petrochems., Inc. v. Dongbu Hannong Chem. Co.*, 2009 WL 666780, at *1 (S.D.N.Y. Mar. 6, 2009) (holding that plaintiff failed to allege personal jurisdiction by merely claiming, without support, that defendant "consented to personal jurisdiction by virtue of [a] forum-selection clause").

Second, the SAC fails to plead any facts establishing a connection between DB's 2016 sponsored ADR program (which became effective more than two years after the start of Plaintiffs' purported class period), on the one hand, and the allegations related to the Individual Defendants, on the other. Viewed from any angle, the SAC does not plead that the Individual Defendants "[themselves] create[d]" sufficient contacts with the United States to establish personal jurisdiction through DB's decision to sponsor a Level 1 ADR program. *Walden*, 571 U.S. at 284. Moreover, DB's contacts cannot be imputed to the Individual Defendants merely because of their positions at DB. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) ("[J]urisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him.").

Courts routinely dismiss securities claims against foreign directors and officers on jurisdictional grounds—even where, unlike here, the company has a considerably stronger connection to the United States and its securities laws in the form of *exchange-traded* ADRs. In *In re AstraZeneca Sec. Litig.*, 559 F. Supp. 2d 453 (S.D.N.Y. 2008), *aff'd sub nom. State Univs.*

---

[4] References to "Ex." refer to the exhibits to the Declaration of Brain T. Frawley in Support of Defendants' Motion to Dismiss the Second Amended Complaint. (Dkt No. 62.)

*Ret. Sys. of Ill. v. Astrazeneca PLC*, 334 F. App'x 404 (2d Cir. 2009), another judge in this district dismissed claims against foreign directors of a foreign corporation with exchange-traded ADRs for lack of personal jurisdiction.  *Id.* at 466-67.  Although the foreign corporation had filed an allegedly misleading report **in the United States with the SEC**—a much stronger and more relevant connection with the United States than any alleged conduct in this case—the Court found that it lacked personal jurisdiction over the foreign directors because "[a] person's status as a board member is not alone sufficient to establish personal jurisdiction," and the plaintiffs had alleged only conclusorily that the foreign directors "caused the distribution of false and misleading reports and statements to AstraZeneca investors in the U.S."  *Id.* at 467; *see also In re Rhodia S.A. Sec. Litig.*, 531 F. Supp. 2d 527, 541–43 (S.D.N.Y. 2007) (finding that no personal jurisdiction over CEO and COO of foreign corporation with exchange-traded ADRs); *Tracinda Corp. v. DaimlerChrysler AG*, 364 F. Supp. 2d 362, 389 (D. Del. 2005) (no personal jurisdiction over CFO of foreign corporation who also served on management board).

Third, even if the Form F-6 could constitute a purposeful **contact** between the Individual Defendants and the United States (which it cannot), Plaintiffs have not pled—and could not plead—any nexus between that contact and Plaintiffs' claims.  As the Supreme Court has made clear, it is "the defendant's suit-related conduct [which] must have created a substantial connection with the forum."  *Walden*, 571 U.S. at 284.  The 2016 Form F-6 is not alleged to contain any misstatements by the Individual Defendants—or any misstatements at all, for that matter.  Plaintiffs' claims thus cannot possibly "arise out of" this limited contact with the forum.  *See Tracinda*, 364 F. Supp. 2d at 390 (dismissing for lack of personal jurisdiction claims against foreign signatory of registration statement filed with SEC because it did not contain alleged misstatements); *In re DaimlerChrysler AG Sec. Litig.*, 247 F. Supp. 2d 579, 589-90 (D. Del.

2003) (personal jurisdiction over foreign supervisory board member could not be established by statements that were not "actionable or fraudulent"). Instead, the only allegations that actually refer to the Individual Defendants assert that officers or directors of a Danish bank, with ordinary shares traded on a Danish stock exchange, made statements from Denmark that did not mention information about the bank's activities in Estonia. There is no "nexus" between Plaintiffs' allegations about the Individual Defendants and the United States.

For the same reasons, Plaintiffs do not and cannot plausibly allege that the Individual Defendants "purposefully directed" any conduct toward the United States. To maintain specific jurisdiction for conduct occurring outside the United States, Plaintiffs must establish that the defendant "intentionally caused—*i.e.*, expressly aimed to cause—an effect in the forum." *Wilder v. News Corp.*, 2015 WL 5853763, at *8 (S.D.N.Y. Oct. 7, 2015) (citing *Tarsavage v. Citic Trust Co.*, 3 F. Supp. 3d 137, 145 (S.D.N.Y. 2014)). Given the completely foreign character of the allegations against the Individual Defendants, the SAC does not support such a theory here. None of the Individual Defendants' alleged misstatements are alleged to have been made in the United States, filed with the SEC, or otherwise directed at the United States. *See Wilder*, 2015 WL 5853763, at *13 (holding that press releases "widely disseminated" to investors online were not "purposefully directed toward" forum and thus were not a sufficient basis for personal jurisdiction); *In re DaimlerChrysler*, 247 F. Supp. 2d at 590 (jurisdiction over foreign supervisory board member could not be established by press releases that "emanate[ed] from Germany"). The alleged conduct here bears no relationship whatsoever to the United States.

### B. *The Exercise of Personal Jurisdiction over the Individual Defendants Is Not Reasonable.*

Even if Plaintiffs had adequately alleged purposeful availment or minimum contacts (which they have not), the exercise of personal jurisdiction over the Individual Defendants here

would still be unreasonable.  In evaluating the "reasonableness" requirement of due process, "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi Metal*, 480 U.S. at 113.  "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Id.* at 114.

All of the conduct described in the SAC is alleged to have taken place overseas.  Plaintiffs have alleged no connection whatsoever between any of the Individual Defendants—each of whom resides in Denmark—and the United States.  Given that DB itself has consented to personal jurisdiction pursuant to the Deposit Agreement, *see* Ex. 11 (2016 F-6), there is no point whatsoever to subjecting the Individual Defendants to suit thousands of miles from home.  Any interest in doing so on Plaintiffs' part is minimal at best.  Furthermore, as the SAC acknowledges, numerous foreign regulators with greater interest than the United States are actively investigating the events underlying this investigation. (*See, e.g.*, SAC at ¶¶ 116, 178, 265.)  In circumstances where authorities have already initiated comprehensive investigations into the same alleged conduct, courts in this district have found the exercise of personal jurisdiction over individuals living abroad to be unreasonable.  *See, e.g.*, *SEC v. Sharef*, 924 F. Supp. 2d 539, 548-49 (S.D.N.Y. 2013) (holding that exercise of personal jurisdiction over retired CEO of subsidiary of German corporation with exchange-traded ADRs was not reasonable given the number and extent of separate inquiries into the conduct of both the CEO and the company).  The same conclusion is warranted here.

## CONCLUSION

For these reasons, the Court should dismiss Plaintiffs' complaint with prejudice due to a lack of personal jurisdiction over the Individual Defendants.

Dated:   New York, New York
         June 18, 2019

                                          Respectfully submitted,


/s/ Edmund Polubinski III                 /s/ Brian T. Frawley
Edmund Polubinski III                     Brian T. Frawley
Tatiana R. Martins                        Katherine L. Bagley
Patrick W. Blakemore                      Amanda Shami
DAVIS POLK & WARDWELL LLP                 SULLIVAN & CROMWELL LLP
450 Lexington Avenue                      125 Broad Street
New York, New York 10017                  New York, NY 10004
Telephone: (212) 450-4000                 Telephone: (212) 558-4000
Fax: (212) 701-5800                       Fax: (212) 558-3588
edmund.polubinski@davispolk.com           frawleyb@sullcrom.com

*Attorneys for Thomas F. Borgen*          *Attorneys for Jacob Aarup-Anderseon.*


/s/ Bruce E. Yannet
Bruce E. Yannet
Helen V. Cantwell
DEBEVOISE & PLIMPTON LLP
919 Third Avenue, 3rd Floor
New York, NY 10022
Telephone: (212) 909-6000
Fax: (212) 909-6836
beyannet@debevoise.com

Jonathan R. Tuttle
Ada Fernandez Johnson
801 Pennsylvania Ave, NW #500
Washington, DC 20004
Telephone: (202) 383-8000
Fax: (202) 383-8118
jrtuttle@debevoise.com

*Attorneys for Ole Andersen*