
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PLUMBERS & STEAMFITTERS LOCAL 773 PENSION FUND, BOSTON RETIREMENT SYSTEM, TEAMSTERS LOCAL 237 ADDITIONAL SECURITY BENEFIT FUND and TEAMSTERS LOCAL 237 SUPPLEMENTAL FUND FOR HOUSING AUTHORITY EMPLOYEES, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiffs,<br><br>              v.<br><br>DANSKE BANK A/S, THOMAS F. BORGEN, HENRIK RAMLAU-HANSEN, JACOB AARUP-ANDERSEN, and OLE ANDERSEN,<br><br>                              Defendants. | Case No. 1:19-cv-00235 (VEC)<br><br>*Oral Argument Requested* |

**DEFENDANT HENRIK RAMLAU-HANSEN'S MEMORANDUM OF LAW
<u>IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT</u>**

PAUL, WEISS, RIFKIND,
 WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
Tel: (212) 373-3000

*Attorneys for Defendant
Henrik Ramlau-Hansen*

Dated: June 18, 2019

**Table of Contents**

Page

Statement of Alleged Facts ................................................................................................................ 1

Argument ............................................................................................................................................ 2

I.  This Court Lacks Personal Jurisdiction over Mr. Ramlau-Hansen.................................... 2

II. The SAC Fails to Allege Any False or Misleading
    Statement Attributable to Mr. Ramlau-Hansen. .................................................................. 4

III. The SAC Fails to Allege Scienter as to Mr. Ramlau-Hansen............................................. 6

IV. The SAC Fails to Allege Control Person Liability as to Mr. Ramlau-Hansen. .................. 8

Conclusion .......................................................................................................................................... 8

## Table of Authorities

**Page(s)**

*In re Aratana Therapeutics Inc. Sec. Litig.*,
   315 F. Supp. 3d 737 (S.D.N.Y. 2018)..................................................................................6

*Barrett* v. *PJT Partners Inc.*,
   2017 WL 3995606 (S.D.N.Y. Sept. 8, 2017).....................................................................7, 8

*C.D.T.S.* v. *UBS AG*,
   2013 WL 6576031 (S.D.N.Y. Dec. 13, 2013) ......................................................................8

*City of Monroe Emps. Ret. Sys.* v. *Bridgestone Corp.*,
   399 F.3d 651 (6th Cir. 2005) ................................................................................................3

*In re DaimlerChrysler AG Sec. Litig.*,
   247 F. Supp. 2d 579 (D. Del. 2003).....................................................................................3

*Diehl* v. *Omega Protein Corp.*,
   339 F. Supp. 3d 153 (S.D.N.Y. 2018)..................................................................................5

*In re Eaton Corp. Sec. Litig.*,
   2017 WL 4217146 (S.D.N.Y. Sept. 20, 2017)......................................................................6

*In re ITT Educ. Servs., Inc. Sec. and S'holder Derivatives Litig.*,
   859 F. Supp. 2d 572 (S.D.N.Y. 2012)..................................................................................5

*Kalnit* v. *Eichler*,
   264 F.3d 131 (2d Cir. 2001)..................................................................................................6

*In re Lululemon Sec. Litig.*,
   14 F. Supp. 3d 553 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015)............................5

*In re Nevsun Res. Ltd.*,
   2013 WL 6017402 (S.D.N.Y. Sept. 27, 2013)......................................................................5

*Patel* v. *L-3 Commc'ns Holdings Inc.*,
   2016 WL 1629325 (S.D.N.Y. Apr. 21, 2016)....................................................................7, 8

*Rombach* v. *Chang*,
   355 F.3d 164 (2d Cir. 2004)..............................................................................................4, 6

*S. Cherry St., LLC* v. *Hennessee Grp. LLC*,
   573 F.3d 98 (2d Cir. 2009)....................................................................................................7

**Page(s)**

*San Leandro Emergency Med. Grp. Profit Sharing Plan* v. *Philip Morris Cos.*,
    75 F.3d 801 (2d Cir. 1996) ............................................................................................................6

*SEC* v. *Sharef*,
    924 F. Supp. 2d 539 (S.D.N.Y. 2013) ............................................................................................3

*Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ......................................................................................................................8

*Walden* v. *Fiore*,
    571 U.S. 277 (2014) ......................................................................................................................2

*Wilder* v. *News Corp.*,
    2015 WL 5853763 (S.D.N.Y. Oct. 7, 2015) ..................................................................................3

Henrik Ramlau-Hansen joins in and incorporates by reference the arguments in the memoranda of law contemporaneously filed by defendants Danske Bank A/S ("Danske Bank") and Thomas F. Borgen, Jacob Aarup-Andersen, and Ole Andersen in support of the Motion to Dismiss the Second Amended Complaint.[1]  The arguments in these memoranda of law are dispositive as to all defendants, including Mr. Ramlau-Hansen.  In addition, Mr. Ramlau-Hansen respectfully submits this memorandum of law to address further reasons why Plaintiffs' Second Amended Complaint dated May 14, 2019 ("SAC") [Dkt. No. 56] fails to allege personal jurisdiction in the United States over Mr. Ramlau-Hansen or to state any claim against him.

## Statement of Alleged Facts

Only nine paragraphs in Plaintiffs' 310-paragraph SAC mention Mr. Ramlau-Hansen by name.  They allege, unremarkably, that:  (i) he was the Chief Financial Officer of Danske Bank and a member of its Executive Board from 2011 to April 2016, SAC ¶ 21; (ii) he is quoted in three press releases announcing that credit rating agencies had upgraded Danske Bank's credit ratings, id. ¶¶ 207, 212, 228; (iii) he discussed a goodwill write-down related to Finland, Northern Ireland and Estonia on a December 2014 conference call, id. ¶¶ 83, 214; and (iv) he announced his resignation from Danske Bank in November 2015, effective April 2016, to enter public service as the chairman of the Danish Financial Supervisory Authority, id. ¶¶ 124, 231.  Based on these allegations, none of which have anything to do with money laundering or compliance efforts in Danske Bank's Estonia branch, Plaintiffs charge that Mr. Ramlau-Hansen is liable for misstatements under Section 10(b) of the Securities Exchange Act of 1934, and Rule 10b–5 promulgated thereunder, id. ¶¶ 296–308, and as a "controlling person" of Danske Bank under Section 20(a) of the Exchange Act, id. ¶¶ 309–310.

---

[1]   The brief submitted on behalf of Danske Bank is herein referred to as "Danske Bank Brief" and its supporting declaration is referred to as "Frawley Decl."  The brief submitted on behalf of Messrs. Borgen, Aarup-Andersen, and Andersen is herein referred to as "Personal Jurisdiction Brief."

## Argument

**I.    This Court Lacks Personal Jurisdiction over Mr. Ramlau-Hansen.**

For the reasons set forth in the Personal Jurisdiction Brief, this Court lacks personal jurisdiction over the individual defendants, including Mr. Ramlau-Hansen, because the Plaintiffs fail to allege any facts suggesting that the individual defendants directed any activity at the United States or otherwise had any connection with the United States.  Plaintiffs thus fall significantly short of their burden to plausibly allege that the individual defendants purposefully directed at the United States "suit-related conduct" sufficient to create a substantial connection with the forum.  *Walden* v. *Fiore*, 571 U.S. 277, 284–85 (2014).  That should end the inquiry.

The absence of any connection with the United States, however, is even more glaring with respect to Mr. Ramlau-Hansen.

*First*, the only alleged misstatements directly attributed to Mr. Ramlau-Hansen—three press releases and a single conference call—were made ***before*** Danske Bank's sponsored ADRs began trading.  *See* SAC ¶¶ 83, 207, 212, 214, 228 (last alleged misstatement made in June 2015).  In fact, Danske Bank announced Mr. Ramlau-Hansen's retirement in November 2015—more than two months before Danske Bank filed a Form F-6 with the SEC in January 2016 to establish a sponsored "Level 1" ADR programme, and more than three months before that programme became effective in February 2016.  *See* SAC ¶ 231; Frawley Decl. Ex. 11 (2016 Form F-6).  Thus, while the Personal Jurisdiction Brief explains why the mere existence of a sponsored ADR programme does not support the exercise of personal jurisdiction and that courts routinely dismiss securities claims against officers and directors even where the issuer has more significant connections to the United States in the form of exchange-traded ADRs, *see* Personal Jurisdiction Br. at 6–7, Plaintiffs' pleading failure is particularly stark with respect to Mr. Ramlau-Hansen.  Not only had Mr. Ramlau-Hansen announced his departure from Danske Bank

2

before the ADR programme became effective, Plaintiffs do not—and could not credibly—plead that Mr. Ramlau-Hansen expressly aimed any "suit-related conduct" at United States investors where, as here, each of his alleged misstatements were made before the sponsored ADR programme took effect.

And crucially, not one of Mr. Ramlau-Hansen's alleged misstatements is alleged to have been made in the United States, filed with the SEC, or otherwise directed at the United States.  *See Wilder* v. *News Corp.*, 2015 WL 5853763, at *13 (S.D.N.Y. Oct. 7, 2015) (holding that press releases "widely disseminated" to investors online were not "purposefully directed toward" forum and thus were not a sufficient basis for personal jurisdiction); *In re DaimlerChrysler AG Sec. Litig.*, 247 F. Supp. 2d 579, 590 (D. Del. 2003) (jurisdiction over foreign supervisory board member could not be established by press releases that "emanated from Germany").

*Second*, Mr. Ramlau-Hansen retired from Danske Bank more than three years ago.  SAC ¶ 231.  This fact also weighs against the reasonableness of exercising personal jurisdiction over him and requiring him to defend a lawsuit in a distant foreign forum.  *See* Personal Jurisdiction Br. at 8–9; *City of Monroe Emps. Ret. Sys.* v. *Bridgestone Corp.*, 399 F.3d 651, 666 (6th Cir. 2005) (holding that the exercise of personal jurisdiction over the retired President and CEO of a Japanese corporation with Level 1 ADRs was not reasonable); *SEC* v. *Sharef*, 924 F. Supp. 2d 539, 548 (S.D.N.Y. 2013) (holding that exercise of personal jurisdiction over retired CEO of subsidiary of German corporation with exchange-traded ADRs was not reasonable).

The SAC thus simply fails to allege any basis to subject Mr. Ramlau-Hansen—a Danish citizen, employed by a Danish bank with ordinary shares traded on a Danish stock

exchange, and whose statements were subject to the oversight of Danish regulators and application of Danish law—to personal jurisdiction in the United States in a lawsuit about money laundering in Estonia. Mr. Ramlau-Hansen should be dismissed for lack of personal jurisdiction.

## II. The SAC Fails to Allege Any False or Misleading Statement Attributable to Mr. Ramlau-Hansen.

The SAC directly attributes only four statements to Mr. Ramlau-Hansen. *See* SAC ¶¶ 83, 207, 212, 214, 228. Plaintiffs fail to allege that *any* of these statements were materially false or misleading.

The alleged misstatements attributed to Mr. Ramlau-Hansen are perhaps most noteworthy for what they *do not* say. None of the alleged misstatements so much as mention money laundering, anti-money laundering controls, Danske Bank's compliance efforts, regulatory inquiries, or financial performance or operational issues unique to Danske Bank's Estonian branch. Rather, the four alleged statements made by Mr. Ramlau-Hansen are limited to three press releases concerning credit rating agency upgrades and a single conference call in which he described a goodwill accounting adjustment that affected several countries in addition to Estonia.

As to the press releases, Plaintiffs do not dispute that the ratings agencies in fact upgraded Danske Bank's credit ratings. SAC ¶¶ 207, 212, 228. That was true. It was also true, and obvious, that a credit rating upgrade is—as Mr. Ramlau-Hansen said—a "positive development," a "good step forward," and something with which any company would be "pleased." *Id*. While a reasonable investor might view a credit rating upgrade itself as important, it would not attach additional importance to *a CFO's characterization* of such an upgrade as a positive development. At most, such characterizations are "expressions of puffery and corporate optimism." *Rombach* v. *Chang*, 355 F.3d 164, 174 (2d Cir. 2004). "[S]tatements

4

expressing a general view that 'things are going well' . . . are generally not actionable." *In re Nevsun Res. Ltd.*, 2013 WL 6017402, at *10 (S.D.N.Y. Sept. 27, 2013). Nor is there any "connect[ion]," *Diehl* v. *Omega Protein Corp.*, 339 F. Supp. 3d 153, 165 (S.D.N.Y. 2018), between these ratings actions and the alleged Estonian money laundering that is the basis of Plaintiffs' lawsuit.

As to the conference call, Plaintiffs' allegation that Mr. Ramlau-Hansen misstated the reasons for the goodwill adjustment because the impairment must have been "because of AML concerns" is entirely conclusory. *See* SAC ¶¶ 83, 214. The SAC offers no factual basis—no internal report, no subsequent disclosure, no press article—that so much as suggests that the goodwill accounting adjustment was made for any reason other than those offered by Mr. Ramlau-Hansen. Mr. Ramlau-Hansen's explanation of the goodwill write-downs on the conference call also is fully consistent with the explanation in Danske's Bank's 2014 Annual Report, which detailed the impairment analysis described by Mr. Ramlau-Hansen. Frawley Decl. Ex. 9 at 87–91.

Plaintiffs' conclusory and speculative assertion that AML concerns caused the write-downs is insufficient to allege falsity. *See In re ITT Educ. Servs., Inc. Sec. and S'holder Derivatives Litig.*, 859 F. Supp. 2d 572, 578–79 (S.D.N.Y. 2012) (speculative claims about the "true reasons" behind educational company's revenue and enrollment increases did not suffice to allege that company's public statements about the causes of the increases were false); *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 579 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015) (plaintiff failed to allege that company's statement about "working with a third party to inspect and test its products" was false because the complaint "fails to allege any facts which indicate that the company did not partner with a third-party testing company").

Indeed, Plaintiffs' own allegations show why the only plausible inference is that the goodwill accounting adjustment had nothing to do with alleged money laundering in Estonia. The SAC alleges that the goodwill accounting adjustment covered Danske Bank's activities "in Finland, Northern Ireland, and Estonia." *See* SAC ¶ 83. Plaintiffs do not—and cannot—explain why the goodwill accounting treatment that they allege was somehow tied to money laundering was applied equally to Finland and Northern Ireland, locations without such alleged issues.

### III. The SAC Fails to Allege Scienter as to Mr. Ramlau-Hansen.

Mr. Ramlau-Hansen is not alleged to have had a motive to defraud. There is no allegation that he gained anything by virtue of the money laundering. He also is not alleged to have sold stock when Plaintiffs allege that Danske Bank shares were artificially inflated.[2] To the contrary, he ***acquired*** shares during the class period, increasing his position from 21,929 shares at the end of 2011 to 29,116 shares at the time of his retirement in 2016. Frawley Decl. Ex. 6 at 115 (Annual Report 2011); Ex. 16 at 126 (Annual Report 2016). This fact undermines the notion that he acted with scienter. *See, e.g.*, *In re Aratana Therapeutics Inc. Sec. Litig.*, 315 F. Supp. 3d 737, 763 (S.D.N.Y. 2018) (defendant's increase in stock holdings during class period was "wholly inconsistent with fraudulent intent") (quoting *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 561 (S.D.N.Y. 2004)); *In re Eaton Corp. Sec. Litig.*, 2017 WL 4217146, at *12 (S.D.N.Y. Sept. 20, 2017) (same).

Absent allegations of motive to defraud, Plaintiffs' allegations of circumstantial evidence of intent "must be correspondingly greater." *Kalnit* v. *Eichler*, 264 F.3d 131, 142 (2d Cir. 2001). Without motive, Plaintiffs must allege conduct that, "at the least," is "highly

---

[2] *See, e.g.*, *Rombach*, 355 F.3d at 177 (plaintiffs failed to plead scienter where they "d[id] not allege that defendants sold stock or profited in any way during the relevant period"); *San Leandro Emergency Med. Grp. Profit Sharing Plan* v. *Philip Morris Cos.*, 75 F.3d 801, 814 (2d Cir. 1996) (lack of stock sales "undermines" any allegation of motive).

6

unreasonable and which represents an extreme departure from the standards of ordinary care." *S. Cherry St., LLC* v. *Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009). This requires "specific allegations that the individual defendants were provided with information" demonstrating the falsity of the alleged misstatements. *Barrett* v. *PJT Partners Inc.*, 2017 WL 3995606, at *9 (S.D.N.Y. Sept. 8, 2017) (Caproni, J.). Plaintiffs must allege the "who, what, and when . . . as to what the Individual Defendants actually knew or should have known." *Patel* v. *L-3 Commc'ns Holdings Inc.*, 2016 WL 1629325, at *8 (S.D.N.Y. Apr. 21, 2016) (Caproni, J.).

Plaintiffs impermissibly rely on group pleading here. *See* SAC ¶¶ 266–269. Not a single allegation in the SAC alleges—by name rather than impermissible group pleading—that Mr. Ramlau-Hansen was told any information about alleged concerns relating to the Estonian branch. Plaintiffs thus fail to specifically allege that Mr. Ramlau-Hansen was aware of an Estonian money laundering problem that would have made his statements false or misleading. None of the purported "red flags" are specifically alleged to have been communicated to him. Read liberally, the SAC at most alleges three reports to the Executive Board, of which Mr. Ramlau-Hansen was a member. *Id.* ¶¶ 63, 70, 77. But none of these reports is alleged to have included sufficient details about the alleged nature and extent of the problem. To the contrary, in each instance, and as discussed in Danske Bank's brief, the Executive Board was told that the issues were being addressed. *See* Danske Bank Br. at 34–35.[3]

---

[3] *Compare also* SAC ¶ 63 (alleging that a "lack of screening of incoming payments" was reported to the Executive Board) *with* Frawley Decl. Ex. 1 § 9.3.9 (BH Report) (same report reassured the Executive Board that "due diligence and monitoring procedures" were being "adjusted to mitigate the risk involved"); SAC ¶ 70 (alleging that Executive Board was informed of a whistleblower allegation) *with* Frawley Decl. Ex. 1 § 9.4.1 (Executive Board also told that whistleblower's allegations would be investigated); SAC ¶ 77 (alleging further discussion with the Executive Board about whistleblower allegations) *with* Frawley Decl. Ex. 1 § 9.4.7 (Executive Board assured at the same time that "the appropriate steps were being taken to continue dealing with the matter in accordance with the Group's whistle blowing policy, as well as all the applicable local regulations and supervisory rules").

Mr. Ramlau-Hansen's receipt of these reports would be entirely consistent with a belief by him that Danske Bank's anti-money laundering controls were working and that any problem was being adequately addressed. *See Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323–24 (2007) ("[A] court must consider plausible, nonculpable explanations for the defendant's conduct."). None of these allegations supports any inference that he must have been intentionally lying when he characterized credit ratings upgrades as positive developments or when he explained the reasons for a goodwill write-down. *See supra*, pp. 4–6. The most compelling interpretation of these statements—which are of the sort that CFOs routinely make—is that they "ha[d] nothing at all to do with fraud." *C.D.T.S.* v. *UBS AG*, 2013 WL 6576031, at *7 (S.D.N.Y. Dec. 13, 2013).

### IV.   The SAC Fails to Allege Control Person Liability as to Mr. Ramlau-Hansen.

Because Plaintiffs fail to plead a primary violation, the Section 20(a) claim must be dismissed. *See Barrett*, 2017 WL 3995606, at *10. This claim should also be dismissed because Plaintiffs fail to allege culpable participation by Mr. Ramlau-Hansen. This element must be pled "with the same particularity as scienter," *Patel*, 2016 WL 1629325, at *17, and the SAC thus fails to plead it for the same reasons.

### Conclusion

The claims against Mr. Ramlau-Hansen should be dismissed in their entirety under Rule 12(b)(2), or in the alternative, under Rule 12(b)(6).

8

| | |
|---|---|
| Dated: New York, New York<br>June 18, 2019 | Respectfully submitted,<br><br>PAUL, WEISS, RIFKIND,<br>  WHARTON & GARRISON LLP<br><br>By:  /s/  Daniel J. Kramer<br>Daniel J. Kramer<br>Jeffrey J. Recher<br>1285 Avenue of the Americas<br>New York, New York 10019-6064<br>Tel: (212) 373-3000<br>dkramer@paulweiss.com<br>jrecher@paulweiss.com<br><br>*Attorneys for Defendant Henrik Ramlau-Hansen* |